**Deborah TAYLOR, Maureen Doebbler, Martin Mahoney and Onix Sosa, on behalf of themselves and other persons similarly situated, Plaintiffs,**

v.

**Pat ANGARANO, as Town Supervisor of Harrison, and Charles Balancia, Joseph Lavigna, Robert Collins and Benjamin Siino, as Councilmembers of the Town Board of Harrison, and the Town of Harrison, Defendants.**

**No. 86 Civ. 5938 (KTD).**

United States District Court,
S.D. New York.

Nov. 3, 1986.

Arthur Eisenberg, New York Civil Liberties Union, Jack Lester, New York City, for plaintiffs.

William Maker, Jr., Deputy Town Atty. of the Town of Harrison, Harrison, N.Y., for defendants.

KEVIN THOMAS DUFFY, District Judge:

This case was brought to answer the question as to whether it is constitutional to require an able-bodied college student to walk a little more than one-half mile to a polling place in order to vote.

The action was initiated on July 31, 1986. On October 2, 1986, a motion was filed herein for a preliminary injunction returnable on October 21, 1986. From the papers it would appear that the parties are desirous of having me determine the question of the preliminary injunction without a hearing. I am loath to do so in most cases, *Securities and Exchange Commission v. Frank*, 388 F.2d 486, 490–91 (2d Cir.1968), but this seems to be a case where that procedure is appropriate.

## FACTS

This case was brought by representative voters among the college students at the State University of New York, Purchase campus ("SUNY–Purchase") in Harrison, New York. In 1983 the Town of Harrison was enjoined from preventing college students at SUNY–Purchase from registering to vote as residents of Harrison. Thus, the town ultimately set up two additional districts to accommodate the newly registered student voters. The first election district set up was the Eighteenth Election District. Its boundaries corresponded to the SUNY–Purchase campus and its polling place was also located on campus.

In 1985, as the number of registered student voters further increased, the town created the Nineteenth Election District with its polling place located on campus in the same building as the Eighteenth District's. The SUNY–Purchase campus was thus divided into two voting districts. In the November, 1985 election, students used these on-campus polling places.

In March 1986, the Harrison Town Board (the "Board") met to discuss moving the polling places to off-campus locations. The Board's given reason for seeking the change was because of incidents involving students, including electioneering and other disturbances, which occurred during the 1985 elections. The Vice President for Finance and Management at SUNY–Pur-chase appeared before the Board and spoke against the proposed move. Nevertheless, the Board decided to move the polling places and eventually the Eighteenth District's polling place was removed to the Anderson Hill Firehouse, and the Nineteenth District's polling place to the Purchase Community House.

It appears from the papers that plaintiffs recognized the possibility of petitioning the Board of Elections to relocate the polling places on campus and chose not to do so. Nor did plaintiffs bring a petition for mandamus pursuant to N.Y.C.P.L.R. § 7801 *et seq.* (McKinney's 1981 & Supp.) which they obviously could have done. Instead, plaintiffs waited until the four month statute of limitations for Article 78 proceedings had lapsed, and then brought this action.[1]

## DISCUSSION

Plaintiffs make essentially two arguments: (1) that the Board sought to make student voting more difficult because it disliked the students' overwhelming support for Democratic candidates; and (2) that the move is unduly burdensome on their rights to vote without being necessary to the advancement of a compelling state interest.

To obtain injunctive relief the party must show "(a) irreparable harm; and (b) either (1) probable success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary injunctive relief." *Kaplan v. Board of Education*, 759 F.2d 256, 259 (2d Cir.1985).

■ It is difficult to see what irreparable harm will befall plaintiffs in the event injunctive relief is denied. All registered voters will be permitted to vote at the new polling places. Moreover, plaintiffs' delay

**1.** Because it appears that the plaintiffs intentionally permitted the statute of limitations to run in order to avoid the argument that the doctrine of abstention should apply, their argument that there is no available state remedy is most disin-genuous. Injunctive relief, since time immemorial, has been denied when the party requesting it has unclean hands. *See DeWeese v. Reinhard,* 165 U.S. 386, 390, 17 S.Ct. 340, 341, 41 L.Ed. 757 (1897).

in bringing suit and in making this motion is evidence weighing against a finding of irreparable harm.

Nor do plaintiffs establish either a likelihood of success on the merits or a sufficiently serious question justifying the grant of injunctive relief. The new polling places are located approximately 1½ miles from the SUNY–Purchase campus and at the most within .6 miles of the public bus stop. Plaintiffs assert that most students do not own cars and would be required to walk this entire distance. Plaintiffs further assert that public transportation is too inconvenient to be of much assistance to the student voters. While it certainly would be more convenient to drive to the polling place, plaintiffs cannot deny that public transportation does exist. There are busses running approximately once per hour which drop passengers off only a short distance from each of the new polling locations. There is no evidence that any student is disabled and unable to walk this short distance. Nor has the University indicated that it would be unable to arrange car pools or provide transportation for students to and from the new polling places.

■ Moreover, plaintiffs' own motion papers indicate that there were in fact incidents of electioneering and other disturbances during the November 1985 elections. Affidavit of Nicholas Zoda, ¶ 4 & 5. Under these circumstances two observations can be made: (1) the location of the new polling places, though less convenient, does not impose a substantial burden on the students' franchise and does not amount to a constitutional violation of plaintiffs' right to vote; and (2) because in these precincts there is no more compelling state interest than protecting the right of its citizens to vote, the Board was entitled to take the necessary steps to protect the integrity of its electoral process.

These facts coupled with plaintiffs' unclean hands mandate the denial of injunctive relief sought in this case.